IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNS ENERGY CORPORATION, an Arizona Corporation
TUCSON ELECTRIC POWER COMPANY,
an Arizona corporation,

     Plaintiffs,

vs.                            Civil Action No. 1:22-cv-00087-KG-LF

SHIVER CONSTRUCTION COMPANY,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the order of reference by the Honorable

District Judge Kenneth Gonzalez "to conduct hearings, if warranted, including evidentiary

hearings, and to perform any legal analysis required to recommend to the Court an ultimate

disposition of the issue of the amount of damages." Doc. 11. The Court held an evidentiary

hearing on October 19, 2022. Doc. 20. Plaintiffs UNS Energy Corporation ("UNS") and Tucson

Electric Power Company ("TEP" and collectively "plaintiffs") appeared through counsel. *Id*. at

1; Doc. 26 (Transcript of Proceedings ("TR")) at 2. Defendant Shiver Construction Company

("Shiver") was served with notice of the hearing but did not appear. Doc. 16-1; TR at 3:25–4:6.

The Court held a hearing on attorney's fees on November 3, 2022. Doc. 25. Shiver did not

appear at that hearing either. *Id*. Having heard the argument of counsel and being fully advised

in the premises, I find that plaintiffs UNS and TEP are entitled to damages, as well as the

attorney's fees and costs they incurred in bringing this case. I recommend that the Court award

plaintiffs damages, and attorney's fees and costs as discussed below.

I.    **Introduction**

    Plaintiffs' complaint arises out of a construction project referred to as the Oso Grande

Wind Project's Operation and Maintenance Building ("O&M Building").  The project is located

approximately one half mile east of Highway 172 in Chaves County, New Mexico (the

"Property").  Plaintiffs entered into a contract with defendant Shiver Construction Company for

the construction of the O&M Building on January 31, 2020.  The project was completed, and

plaintiffs issued payment in full.  Subsequently, having received notice of multiple mechanic's

liens on the Property, plaintiffs filed suit against Shiver and perfected service on February 15,

2022.  Shiver failed to respond to the complaint and has cut off all communications with

plaintiffs.

II.   **Findings of Fact**

    Plaintiff UNS is a foreign corporation conducting business in the state of New Mexico

with its principal place of business in Tucson, Arizona.  Doc. 1 at 1.  Plaintiff TEP is a foreign

corporation conducting business in the state of New Mexico with its principal place of business

in Tucson, Arizona.  *Id.*  UNS is the parent company of TEP.  *Id.* at 2; TR at 9:16–18.  Shiver is

a New Mexico corporation conducting business in New Mexico with its principal place of

business in Albuquerque, New Mexico.  Doc. 1 at 1.

    On January 31, 2020, Shiver as "Contractor" and UNS as "Owner" entered into a

Construction Services Agreement ("Contract") for construction of the O&M Building.  Doc. 1-1

at 1–23[1]; TR at 11:6–17.  The Contract was executed by Jacob Shiver on behalf of Shiver

---

[1] The first 23 pages of the Contract are attached to the complaint.  Doc. 1-1 at 1–23.  The entire contract was introduced into evidence as exhibit A.  *See* TR at 12:23–13:23.  The entire contract is 145 pages, *see* Exh. A, but the first 23 pages contain all the relevant provisions of the contract. Thus, for ease of reference, this PFRD refers to the contract provisions attached to the complaint.

Construction Company on January 31, 2020.  Doc. 1-1 at 23; TR 13:7–14:13.  UNS executed the Contract solely as the parent company of TEP, a UNS subsidiary, which actually received the construction services and goods.  Doc. 1-1 at 22; TR 9:16–22.

Pursuant to Article 4 of the Contract, between February 2020 and March 2021, Shiver submitted payment applications for completed work, and plaintiffs made payments.  Doc. 1-1 at 9–12; TR at 15:23–17:5, 19:16–26:13; Exhs. B, C.  On March 3, 2021, plaintiffs paid off the Contract, having made payments totaling $3,176,208.22 plus change orders and taxes in the amount of $1,064,413.24, bringing the total paid to Shiver to $4,240,621.46.  Doc. 1 at 3; TR at 23:25–24:21, 28:8–23; Exhs. B, C.  When Shiver submitted its application to plaintiffs for final payment, it represented that all of the Contract's requirements had been met, including payment of all subcontractors.  TR at 28:24–29:12.  Pursuant to the terms of the Contract, Shiver was required to pay its subcontractors within seven days of receipt of each progress payment.  Doc. 1-1 at 11, § 4.4; TR at 28:24–29:12.  Shiver failed to pay its subcontractors as required by the Contract.  *See generally* Doc. 1-1; TR at 29:13–30:12, 30:22–31:16; 36:19–37:11.  Plaintiffs relied on Shiver's representations that Shiver had paid its subcontractors when it paid Shiver in full on the Contract.  TR at 28:4–29:12.  Plaintiffs soon discovered, however, that Shiver had not paid all its subcontractors as required.  TR at 29:13–30:7.

On February 11, 2021, MJ Concrete & Construction, a subcontractor of Shiver, filed a lien for $99,900.00 against the Property.  Doc. 1-1 at 24–26; TR at 39:22–40:9; Exh. M.  On February 24, 2021, Northern Constructors, Inc., a subcontractor of Shiver, filed a lien for $121,060.00 against the Property.  Doc. 1-1 at 27–44; TR at 41:21–42:11; Exh. N.  On March 10, 2021, Ramirez & Sons, Inc., a subcontractor of Shiver, filed a lien for $193,461.56 against the Property.  Doc. 1-1 at 45–49; TR at 42:21–43:9; Exh. O.  On April 15, 2021, Rhoads Co., a

subcontractor of Shiver, filed a lien for $100,090.50 against the Property.  Doc. 1-1 at 50–57; TR at 43:14–44:4; Exh. P.[2]

On August 13, 2021, plaintiffs paid MJ Concrete & Construction $99,900.00 to release the lien on the Property.  Doc. 1 at 3; TR at 44:9–20.  On July 19, 2021, plaintiffs paid Northern Constructors, Inc. $121,060.00 to release the lien on the Property.  Doc. 1 at 4; TR at 45:20–46:8.  On August 17, 2021, plaintiffs paid Ramirez & Sons, Inc. $193,461.56 to release the lien on the Property.  Doc. 1 at 4; TR at 46:25–47:14.  On June 24, 2021, plaintiffs paid Rhoads Co. $100,090.50 to release the lien on the Property.  Doc. 1 at 4; TR at 47:22–48:11.  The total amount plaintiffs paid to subcontractors to release mechanics liens on the Property equals $514,512.06.  TR at 48:23–49:1.

Following plaintiffs' payments to MJ Concrete and Construction; Northern Constructors, Inc.; Ramirez & Sons, Inc.; Rhoads Co. (collectively, the "Subcontractors"), the Subcontractors released their respective liens on the Property, and each assigned all of their respective rights and claims under and arising from their respective contracts with Shiver to plaintiffs.  Doc. 1 at 4–5; TR at 45:20–46:17; 46:25–47:11; 48:3–6.  All the Subcontractors who filed liens on the Property did so based on Shiver's misrepresentation that Shiver could not pay the amounts owed to each subcontractor because plaintiffs had not paid Shiver.  *See* TR at 45:10–19, 46:18–24, 47:15–21, 48:12–17; 55:19–56:2.

On March 30, 2021, after plaintiffs had made final payment to Shiver and after they became aware of some of the liens, plaintiffs' counsel wrote a letter to Shiver demanding an explanation and that Shiver remedy the situation.  TR at 30:23–32:3; Exh. D.  On April 4, 2021,

---

[2] Other subcontractors also filed liens, but plaintiffs did not seek damages related to those liens. *See, e.g.*, Doc. 1-1 at 58–61.

in an e-mail response to plaintiffs, Shiver acknowledged that there were "still some open balances that Shiver is working through getting paid," Exh. H, despite its earlier representation that all the subcontractors had been paid.  Shiver also stated that "[t]here are vendors who[se] payment claims are being disputed," but Shiver did not specify which claims it disputed or on what grounds.  Exh. H; TR at 36:19–25.  It further stated that it would "continue working towards the mechanics lien bond[;] however payment and resolution to these vendors is the ultimate goal."  Exh. H.  Shiver did not provide any valid reason for withholding payment, stating only that it "took a financial beating on this project."  *Id.*  Shiver never posted any bond for release of any liens on the Property.  TR at 37:1–3.  Shiver never disputed any subcontractors' claim for payment.  See Doc. 1 at 5; TR at 36:16–37:5.  Shiver never evidenced any valid basis for withholding payment from the Subcontractors.  *Id.*

Despite repeated efforts to reach Shiver by phone, electronic mail, and certified mail, Shiver has not communicated with plaintiffs since April 4, 2021.  *See* Exhs. H, J; TR at 32:8–34:10, 35:25–37:11, 38:19–39:8; Doc. 1-1 at 62, 71–73.  Shiver was personally served on February 15, 2022.  Doc. 3.  Shiver did not file an answer or any other appropriate responsive pleading.  *See* Docket, *UNS Energy Corporation et al v. Shiver Construction Company*, 1:22-cv-00087-KG-LF.  The Clerk issued an entry of default against Shiver on May 4, 2022.  Doc. 7.  The Court granted plaintiffs' motion for default judgment as to Shiver on June 16, 2022, ordering that default judgment be entered in favor of plaintiffs and against Shiver, with the amount of damages to be determined by a hearing on the issue of damages alone.  Doc. 10.

### III.   <u>Legal Analysis</u>

####    A.  **Default Judgment**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).  After the clerk has entered default, and a plaintiff applies to a court for default judgment, a district court may enter a default judgment. *See* FED. R. CIV. P. 55(b).

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).  This allows the Court "to determine that it has the power to enter the default judgment." *Id.*; *see also Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (holding that a default judgment is not appropriate if the court does not have jurisdiction over the subject matter and the defendant).

After determining it has jurisdiction over the subject matter and the defendant, a court must decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-CV-02445-LTB-MJW, 2008 WL 793606, *1 (D. Colo. Mar. 22, 2008); *see also Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (internal quotation marks and citation omitted).  In deciding a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages.  *See United States. v. Craighead*, 176 F. App'x 922, 925 (10th

Cir. 2006) (unpublished).  The Court must determine whether the allegations contained in plaintiff's complaint are sufficient to state a claim for relief.  To state a claim for relief, the complaint must contain sufficient factual matter, accepted as true, to show that the claim is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the plaintiff pleads facts that allow the court to reasonably infer that the defendant is liable for the alleged conduct.  *Id.*  A pleading that offers mere legal conclusions, or a recitation of the elements of a cause of action, is insufficient.  *Id.*  A trial court is vested with broad discretion in deciding whether to enter a default judgment.  *See Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

The Court previously determined that the Court has jurisdiction over the parties and subject matter of this action, that Shiver has no meritorious defense, and that a default judgment should be entered in favor of plaintiffs with the amount of damages to be determined at an evidentiary hearing.  Doc. 10.  The Court referred this matter to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the issue of the amount of damages."  Doc. 11.  I held a hearing on the damages issue on October 19, 2022, and I recommend that the Court enter judgment in accordance with the following determination of damages.

### B.  Breach of Contract

"Contracts allow parties to come to legally enforceable agreements about the way that they will interact with one another."  *Beaudry v. Farmers Ins. Exch.*, 2018-NMSC-012, ¶ 24, 412 P.3d 1100, 1107 (alteration, citation omitted).  A breach-of-contract plaintiff must prove (in addition to a valid contract) defendant's breach, causation, and damages resulting from the breach.  *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶18, 119 N.M. 436,

442, 891 P.2d 1190, 1196, *overruled on other grounds*, *Sunnyland Farms, Inc. v. Cent. NM Elec. Co-op., Inc.*, 2013-NMSC-017, 301 P.3d 387; *see also Smoot v. Phys. Life Ins. Co*., 2004-NMCA-027, ¶ 14, 135 N.M. 265, 269, 87 P.3d 545, 549 (no breach-of-contract claim where plaintiff failed to identify contract provision breached).

In this case, Shiver breached the Contract by failing to pay its subcontractors as required under Section 4.4. of the Contract for the subcontractors' work in connection with the O&M Building.  This breach caused plaintiffs to incur $514,512.06[3] in damages to release liens filed against the Property by the Subcontractors.

As the non-breaching party, plaintiffs are entitled to recover $514,512.06 plus attorney's fees and costs in damages from Shiver.  *Sunnyland Farms, Inc.*, 2013-NMSC-017, ¶ 11, 301 P.3d at 392 ("[I]n an action for breach of contract, the breaching party 'is justly responsible for all damages flowing naturally from the breach.'"); Doc. 1-1 at 8, § 3.12 (stating Contractor shall indemnify Owner for all liens and charges of every type, including attorney's fees, which may be claimed as a consequence of acts or omissions of Contractor); *Montoya v. Villa Linda Mall, Ltd.*, 1990-NMSC-053, ¶ 8, 110 N.M. 128, 129, 793 P.2d 258, 259 (stating "absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties," and citing *Cable Marine, Inc. v. M/V Trust ME II*, 632 F.2d 1344, 1345 (5th Cir.1980) (when attorney's fees are authorized by contract rather than by statute, trial court does not have same degree of equitable discretion to deny fees)).

---

[3] The total cost to pay off the liens filed by MJ Concrete & Construction ($99,900.00), Ramirez & Sons, Inc. ($193,461.56), Northern Constructors, Inc. ($121,060.00) and Rhoads Co. ($100,090.50) was $514,512.06.

### C.  Prompt Payment Act

New Mexico's Prompt Payment Act obligates contractors to promptly pay their subcontractors, and it imposes penalties for failing to do so.  N.M. STAT. ANN. §§ 57-28-5(C), 57-28-11.  Specifically, where a contractor fails to pay its subcontractor in violation of the Prompt Payment Act, the contractor must pay interest computed at one and one-half percent of the amount due, per month, until payment is issued, and the court may award court costs and reasonable attorney's fees to enforce the provisions of the Prompt Payment Act.  *Id.*  When a contractor fails to pay its subcontractor within seven days of receiving payment from the owner, interest accrues "beginning on the eighth day after payment was due, computed at one and one-half percent of the undisputed amount per month or fraction of a month until payment is issued." N.M. STAT. ANN. § 57-28-5(C).

Here, plaintiffs are assignees of the Subcontractors' Prompt Payment Act claims against Shiver.  Plaintiffs therefore are entitled to interest pursuant to the Prompt Payment Act that would be due and owing to the Subcontractors.  *See Investment Co. of the Southwest v. Reese*, 1994-NMSC-051, ¶¶ 29, 30, 117 N.M. 655, 661, 875 P.2d 1086, 1092 (assignee stands in the shoes of the assignor).  The calculation of damages varies for each Subcontractor, and the exact date each Subcontractor was entitled to begin collecting interest is difficult to calculate.  TR at 64:6–21.  Because of this difficulty, plaintiffs agreed to accept interest going forward based on the date of plaintiffs' final payment to Shiver, which was March 3, 2021.  TR 64:22–66:5.  This calculation benefits Shiver because it is later than the actual date that interest would begin to accrue.  Accordingly, plaintiffs should be awarded interest pursuant to the Prompt Payment Act beginning March 10, 2021—which is within seven days of Shiver's receipt of payment from

plaintiffs.[4]

Specifically, plaintiffs are entitled to interest computed at one and one-half percent of $99,900.00, per month, from Shiver, for the interest on the payment due to MJ Concrete & Construction; interest computed at one and one-half percent of $121,060.00, per month, from Shiver for the interest on the payment due to Northern Constructors, Inc.; interest computed at one and one-half percent of $193,461.56, per month, from Shiver, for the interest on the payment due to Ramirez & Sons Inc.; and interest computed at one and one-half percent of $100,090.50, per month, from Shiver, for the interest on the payment due to Rhoads Co., beginning on March 10, 2021, plus plaintiffs' costs and reasonable attorney's fees to enforce the provisions of the Prompt Payment Act. Interest continues to accrue until payment is issued. N.M. STAT. ANN. § 57-28-5(C).

### D. Unfair Practices Act

To state a claim under the New Mexico Unfair Practices Act ("UPA"), a complaint must allege that: (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person. *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (citing N.M. STAT. ANN.

---

[4] The testimony established that the Subcontractors should have been paid—and Shiver represented that all of the subcontractors were paid—before plaintiffs made their final payment to Shiver on March 3, 2021. TR at 28:24–29:12. The Prompt Payment Act, however, is not triggered until the owner pays the contractor, who then in turn must pay its subcontractors within seven days of receipt of payment. N.M. STAT. ANN. 57-28-5(C). Because plaintiffs' last payment to Shiver was on March 3, 2021, Shiver was required to pay all its subcontractors within seven days, or by March 10, 2021. *See id.*

§ 57-12-2(D)).  The UPA provides private remedies and civil penalties "for unfair, deceptive, or unconscionable trade practices."  *New Mexico ex rel. Balderas v. Real Estate Law Ctr., P.C.*, 401 F. Supp. 3d 1229, 1315 (D.N.M. 2019).

As discussed in the Findings of Fact above, Shiver made false and misleading statements regarding its ability and intention to pay its subcontractors for work the subcontractors performed on the O&M Building.  Shiver's false and misleading statements were made in connection with the services it was performing for plaintiffs as part of its construction business. Shiver's false and misleading statements deceived plaintiffs into reasonably believing that they would receive the completed O&M Building free of any liens, in violation of Section 57-12-2(D)(2) of the UPA.

Pursuant to the UPA, plaintiffs are entitled to actual damages in the amount of $514,512.06 resulting from Shiver's false and misleading statements.  N.M. STAT. ANN. § 57-12-10(B).  Additionally, because Shiver willfully engaged in an unfair trade practice, plaintiffs are entitled to treble damages in the amount of $1,543,536.18, in addition to their attorney's fees and costs.  N.M. STAT. ANN. § 57-12-10(B), (C).

### E.  Fraud

"The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation."  *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 137 N.M. 420, 429, 112 P.3d 281, 290 (citing NMRA, Civ. UJI 13-163).  Here, Shiver knowingly or recklessly made multiple material misrepresentations regarding payment on the Contract to the Subcontractors, telling them that plaintiffs did not pay Shiver.  Shiver was aware or should have

11

been aware that these representations were false as plaintiffs paid the amount due under the

contract in full on March 3, 2021.  Shiver acted with the intent to deceive and induce its

subcontractors to stop pursuing payment, or delay payment, from Shiver.[5]  Shiver also

represented to plaintiffs that it did pay and would pay all its subcontractors as required under the

Contract, knowing that it had not done so and would not do so.  Plaintiffs relied on Shiver's

misrepresentations that it paid or would pay its subcontractors and was damaged by such reliance

when the Subcontractors filed liens on the Property, forcing Plaintiffs to pay the Subcontractors

to release the liens.

Because of Shiver's fraudulent conduct, plaintiffs are entitled to recover "such damages

as are the direct and natural consequences" of the reliance on a fraudulent representation."  *Id*.

Accordingly, plaintiffs are entitled to $514,512.06, plus attorney's fees and costs, for their fraud

claim against Shiver.

### F.  Negligent Misrepresentation

Negligent misrepresentation is an action governed by the general principles of the law of

negligence.  *R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 1988-NMCA-111, ¶ 10, 108 N.M. 84, 88,

766 P.2d 928, 932.  To recover under a claim of negligent misrepresentation, Shiver must have

breached a duty of disclosure owed to plaintiffs, plaintiffs must have had a right to rely on the

misinformation, and they must have sustained damages.  *Ruiz v. Garcia*, 1993-NMSC-009, ¶ 26,

115 N.M. 269, 274, 850 P.2d 972, 976.

---

[5] Because the Subcontractors assigned all their claims against Shiver to plaintiffs, plaintiffs may rely on misrepresentations made to the Subcontractors as well as misrepresentations made to plaintiffs themselves.  *See Investment Co. of the Southwest*, 1994-NMSC-051, ¶¶ 29, 30, 117 N.M. at 661, 875 P.2d at 1092 (assignee stands in the shoes of the assignor).

The implied covenant of good faith and fair dealing that attaches to all contracts created a duty that Shiver disclose to plaintiffs that it did not and would not pay its subcontractors. *See Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 1999-NMSC-006, ¶ 35, 127 N.M. 1, 14, 976 P.2d 1, 14 ("if good faith and fair dealing require it, there can be an affirmative duty to act in order to prevent the denial of the other party's rights under the agreement"). Shiver's negligent misrepresentations to plaintiffs that it had paid, and it would pay its subcontractors as required by the contract entitle plaintiffs to damages "proximately caused by the misrepresentation[s]"—in this case equaling $514,512.06, plus attorney's fees and costs. *Cobb v. Gammon*, 2017-NMCA-022, ¶¶ 60, 67, 389 P.3d 1058, 1078–79.

### G.  No Duplication of Damages

"New Mexico does not allow duplication of damages or double recovery for injuries received." *Hale v. Basin Motor Co.*, 1990-NMSC-068, ¶ 20, 110 N.M. 314, 320, 795 P.2d 1006, 1012. "[R]ecovery of both statutory treble damages and punitive damages based upon the same conduct would be improper." *Id.* "When a party may recover damages under separate theories of liability based upon the same conduct of the defendant, and each theory has its own measure of damages, the court may make an award under each theory. In that event the prevailing party must elect between awards that have duplicative elements of damages." *Id.*

Although plaintiffs may recover damages under each separate theory of liability, they are not allowed double recovery. *See id.* ¶ 21. They must elect between awards that have duplicate elements of damages. *Id.* At the hearing, plaintiffs advised that they are electing actual damages in the amount of $514,512.06 and treble damages pursuant to the New Mexico Unfair Practices Act, instead of any punitive damages to which they may be entitled. TR at 61:22–62:9. Thus, to avoid duplication of damages, plaintiffs are entitled to total damages of $1,543,536.18, which

include their actual damages of $514,512.06.  *See* N.M. STAT. ANN § 57-12-10(B) (court may award actual damages or treble damages under the UPA).  Plaintiffs also are entitled to interest under the Prompt Payment Act on $514,512.06, at a rate of one and one-half percent per month, beginning on March 10, 2021, until paid.  *See* N.M. STAT. ANN. § 57-28-5(C); *see also* N.M. STAT. ANN. § 57-12-10(D) (the relief available under the UPA is in addition to remedies available for the same conduct under other statutes).  They also are entitled to their costs and attorney's fees as discussed below.

### H.  Costs and Attorney's Fees

Costs in federal court are governed by federal statute.  Congress has specified six categories of litigation expenses, and manners for computing them, that a federal court may award as costs.  "As we have explained, the term 'costs' refers to the costs generally available under the federal costs statute [28 U.S.C.] §§ 1821 and 1920."  *Rimini Street v. Oracle USA, Inc.*, 139 S. Ct. 873, 879 (2019).  Section 1821 of title 28, United States Code, dictates what costs may be recovered from retaining witnesses.  Notably, the statute treats expert witnesses and lay witnesses the same, capping expert witness fees at a daily per diem rate of $40 per day for each day's "attendance."  28 U.S.C. § 1821(2)(b); *see also Rimini Street,* 139 S. Ct. at 878 ("We again explained that 'costs' is a term of art that generally does not include expert fees").

Section 28 U.S.C. § 1920 outlines six categories of costs as taxable costs:  (1) fees of the Clerk and Marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any material where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed court experts, compensation of interpreters, and salaries, fees, expenses, and

costs of special interpretation services under 28 U.S.C. § 1928.  To obtain costs, a party must file a bill of costs, and, upon allowance, the Court will include the costs in the judgment or decree. 28 U.S.C. § 1920.  Additionally, costs for private process servers are generally taxable up to the amount that would have been incurred if the U.S. Marshal's office had effected service.  *Tint World, LLC v. Mirror Image Glass & Auto Detailing, LLC,* 2022 WL 1684869, *3 (D.N.M. May 6, 2022) (Proposed Findings and Recommended Disposition) (adopted by 2022 WL 1664406 (D.N.M. May 25, 2022)).

When state law allows the recovery of attorney's fees, it is a substantive right for the prevailing party, not a procedural issue.  *Chieftain Royalty Co. v. Enervest Energy Institutional Fund*, 888 F.3d 455, 461 (10th Cir. 2017).  Thus, in diversity cases, state law controls whether a party is entitled to attorney's fees.  *Id.*  State law also governs the calculation of fees.  *Id.* at 462.

In this case, the contract between plaintiffs and Shiver provides for attorney's fees to a prevailing party in a dispute arising from the performance of the contract.[6]  Doc. 1-1 at 8, § 3.12. "In the face of such a provision, a court has no discretion but to award fees if the contract requires it."  *Mountain Highlands, LLC v. Hendricks*, 2010 WL 1631856, *3 (D.N.M. 2010). Out of fairness to the party required to pay fees, the fees must be reasonable.  *Id.*  The lodestar calculation is the starting point for determining reasonable fees.  *Atherton v. Gopin*, 2012-NMCA-023, ¶ 7, 272 P.3d 700, 702.  The court determines a fee that approximates a reasonable hourly rate multiplied by a number of hours reasonably incurred in the representation.  *Id.*

---

[6] As explained above, plaintiffs also are entitled to attorney's fees under the Prompt Payment Act, the UPA, their fraud claim, and their negligent representation claim.  Because the calculation is the same under each theory of recovery, the Court only addresses attorney's fees under plaintiffs' breach of contract claim.

In *Budagher v. Sunnyland Enterprises, Inc.*, 1979-NMSC-100, ¶ 4, 93 N.M. 640, 641, 603 P.2d 1097, 1098, a New Mexico breach of contract case, the Court listed several factors that courts should consider in determining the reasonableness of attorney's fees:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; and (6) the experience, reputation, and ability of the lawyer or lawyers performing the services.

Plaintiffs' counsel submitted an affidavit outlining plaintiffs' attorney's fees together with a bill of costs and an Affidavit of Reasonableness executed by a local attorney.  *See* Docs. 23, 24.  Four attorneys at Butt, Thornton, & Baehr, P.C., worked on the prosecution of this case: Jason Patton, Nicholas Nunez, Stephanie Schneider, and Stuart Wilkins.  Mr. Patton performed most of the work.  *See* Doc. 23-1.  Mr. Patton's rate ranged from $225 per hour to $255 per hour. Doc. 23, ¶ 8.  Mr. Patton is a shareholder at Butt, Thornton & Baehr, P.C., with seven years of experience and expertise in civil litigation, construction law, and contract law.  *See id.* ¶¶ 2, 4. Mr. Patton stated at the hearing that he also has 15 years of prior experience in general construction.  Stephanie J. Schneider is an associate attorney with a rate of $205 per hour.  *See* Doc. 23-1.  Nicholas D. Nunez and Stuart H. Wilkins are associate attorneys with rates of $185 per hour.  *See id.*  Paralegal services were performed by Francis T. Perez at a rate of $125 per hour.  *See id.*

Considering the factors relevant to determining the reasonableness of attorney's fees, I find that the fees sought here are reasonable.  The time spent on the matter was reasonable given the non-cooperation of the defendant and the difficulty of the issues involved in the case.  The

16

rates charged by the attorneys are similar to rates charged in New Mexico for similar services. *See* Doc. 24.  Plaintiffs' attorneys obtained a fully favorable result in a case that involves a substantial amount of damages.  I recommend that the Court award plaintiffs $33,854.75 in attorney's fees, which includes gross receipts taxes.  *See* Doc. 23-1 at 11–67.

I also considered the claimed costs and whether they were allowable under 28 U.S.C. § 1920.  *See* Doc. 23-1 at 1–11; Doc. 25.  The costs include copying fees, transcript fees, filing fees, and service fees.  *See id.*  I find that the claimed costs are reasonable and recoverable under the applicable federal statutes.  I recommend that the Court award plaintiffs the taxable costs of $1,176.50.

**IV.**     <u>**Recommendation**</u>

For the reasons stated above, I recommend that the Court award plaintiffs UNS Energy Corporation and Tucson Electric Power Company treble damages in the amount of $1,543,536.18; interest on $514,512.06 computed at one and one-half percent per month beginning on March 10, 2021, until paid; attorney's fees in the amount of $33,854.75; and costs in the amount of $1,176.50.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

---

Laura Fashing
United States Magistrate Judge